1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10   DEBORAH BRADLEY,                )  No. CV 05-865-PJW
                                     )
11              Plaintiff,           )
                                     )  MEMORANDUM OPINION AND ORDER
12          v.                       )
                                     )
13   JO ANNE B. BARNHART,            )
     Commissioner of the Social      )
14   Security Administration,        )
                                     )
15              Defendant.           )
     _____)
16

17                              I.

18                         INTRODUCTION

19       Plaintiff brings this action pursuant to 42 U.S.C. §§ 405(g) and

20   1383(c)(3), seeking to overturn the decision of the Social Security

21   Administration (hereinafter the "Agency") denying Supplemental

22   Security Income ("SSI") benefits.  Alternatively, she asks the Court

23   to remand the case to the Agency for further proceedings.  For the

24   reasons discussed below, the decision of the Agency is REVERSED, and

25   the action is REMANDED for further proceedings consistent with this

26   opinion.

27
28

1                                     II.

2                                 BACKGROUND

3        Plaintiff was born on October 15, 1962, and was 41 years old at

4   the time of the February 5, 2004 administrative hearing.

5   (Administrative Record ("AR") 81.)  As such, she was a "younger

6   person" in social security parlance.  20 C.F.R. § 416.963(c).  She

7   completed high school, and obtained an AA degree in 1984.  (AR 81.)

8   Thereafter, Plaintiff worked as a claims examiner for Aetna Healthcare

9   and others for about 22 years.  (AR 33, 81-82, 186.)

10  A.   History of Plaintiff's Disability and SSI Applications

11       Plaintiff filed an application for SSI on July 23, 1991, which

12  was denied.  She did not appeal this denial.

13       In September 1999, Plaintiff was involved in an automobile

14  accident, which "reactivated an old back injury" and, she claims,

15  rendered her disabled.  (AR 82, 192.)  As a result of the injuries she

16  sustained in the accident, Plaintiff was unable to continue working

17  full time at Aetna and worked part-time (four hours per day) for

18  approximately nine months.  (AR 33-34.)  After Aetna informed her that

19  she had to work at least six hours to keep her job, Plaintiff quit and

20  filed a workers' compensation action, alleging undue stress.  (AR 85.)

21       Plaintiff filed the instant application for SSI on February 1,

22  2001, alleging inability to work since September 25, 1999.  (AR 161-

23  63, 185.)  She claimed that she suffered from lumbar disc disease with

24  sciatica, resulting in an inability to sit, stand, walk, or bend

25  without pain.  (AR 185.)  Following an initial denial of her claim,

26  Plaintiff requested a hearing before an administrative law judge

27  ("ALJ").  (AR 115-19, 122.)

28

                                       2

B.   The 2002 Hearing and the ALJ Decision

On May 1, 2002, a hearing was held before an ALJ.  (AR 29-56.)
Plaintiff was represented by counsel and testified at the hearing.
(AR 31-49, 54-56.)  A vocational expert also testified.  (AR 50-54.)

By decision dated September 16, 2002, the ALJ found that
Plaintiff was capable of light work, limited to simple one- or two-
step instructions in a low stress environment with normal and average
production and pace.  (AR 106-110.)  The ALJ concluded that, although
Plaintiff could no longer perform her past relevant work, there were
other jobs which she could perform.  Accordingly, the ALJ determined
that Plaintiff was not disabled as defined in the Social Security Act
at any time through the date of his decision.  (AR 111.)

C.   The Appeals Council Remand

On June 10, 2003, the Appeals Council vacated the ALJ's decision
and remanded the case for a new hearing based on the fact that
voluminous new medical records had been submitted while the case was
on appeal.  (AR 135-38.)  The Appeals Council concluded that these new
records "suggests a possibility of greater impairment severity and
limitations."  (AR 136-37.)  The Council directed the ALJ on remand
to:

- obtain additional evidence regarding
  musculoskeletal and mental impairments (including,
  if necessary, consultative orthopedic and mental
  status examinations);

- give further consideration to maximum residual
  functional capacity and evaluate the treating and

examining source opinions and nonexamining source
opinions, explaining the weight given to such
evidence;

• further evaluate subjective complaints;

• further evaluate mental impairments;

• if necessary, obtain evidence from a medical
expert to clarify the nature and severity of
impairments; and

• if warranted by the expanded record, obtain
additional evidence from a vocational expert
regarding identification of potential jobs.

(AR 137-38.)

D.    The 2004 Hearing and the ALJ's Decision

On February 5, 2004, a different ALJ held a new hearing.  (AR 57-101.)  Plaintiff was represented by counsel and testified at the hearing.  (AR 59, 81-92.)  In addition, a vocational expert and two medical experts testified.  (AR 64-100.)

On March 25, 2004, the second ALJ issued a decision analyzing Plaintiff's claims under the Agency's five-step sequential evaluation process, ultimately concluding that Plaintiff was not disabled.  (AR 20-28.)  The ALJ determined that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of her disability.  (AR 27.)  She found that Plaintiff had severe impairments, including degenerative joint disease of the lumbar spine

4

1  and depression, but that Plaintiff's impairments did not meet or equal

2  a Listing.[1]  (AR 27.)

3       The ALJ concluded that Plaintiff was physically capable of light

4  work, but, due to mental and emotional impairments, could not work

5  with the public and should have no more than occasional interaction

6  with supervisors and co-workers.  (AR 27.)  The ALJ determined that

7  Plaintiff could not return to her job as a claims examiner, but was

8  capable of performing the occupations of hand packer and linen grader

9  and that these jobs existed in significant numbers in the economy.

10 (AR 26-27.)  Plaintiff challenged the ALJ's decision, but the Appeals

11 Council denied review.  (AR 6-7.)  Plaintiff then filed suit in this

12 Court.

III.

ANALYSIS

15      Plaintiff alleges that the ALJ erred by (1) improperly rejecting

16 the opinions of the treating physicians in favor of non-treating, and

17 non-examining physicians; (2) finding that Plaintiff's testimony was

18 not credible; and (3) failing to set forth a complete and accurate

19 hypothetical to the vocational expert.  (Joint Stipulation ("JS") at

20

21      [1]  The ALJ noted that Plaintiff claimed six impairments:
22 vertigo, gastroesophageal reflux disease, depression, hypertension,
   high cholesterol, and degenerative joint disease of the lumbar spine.
23 (AR 22.)  The medical expert opined that, of these, the hypertension
   and high cholesterol were not severe, and the vertigo,
24 gastroesophageal reflux disease, and depression were controlled.  (AR
   22.)  Although she did not explicitly state, it appears the ALJ agreed
25 with the medical expert that Plaintiff's vertigo, gastroesophageal
   reflux disease, hypertension, and high cholesterol were not severe
26 within the meaning of the Regulations.  (AR 23.)  It should also be
   noted that nowhere on Plaintiff's Disability Report did she indicate
27 that vertigo, gastroesophageal reflux disease, hypertension, or high
   cholesterol limited her ability to work.  (AR 184-93.)
28

5

1   2.)  For the reasons set forth below, the Court finds that the ALJ

2   properly rejected the opinion of Plaintiff's treating psychiatrist,

3   but failed to state specific and legitimate reasons for rejecting the

4   opinion of Plaintiff's treating orthopedist.  For that reason, remand

5   is required.  As to Plaintiff's other claims of error, the Court finds

6   that the ALJ's finding that Plaintiff was not credible is supported by

7   the evidence and the hypothetical to the vocational expert adequately

8   took into account all of Plaintiff's limitations.

9   A.   Standard of Review

10       "Disability" under the Agency regulations is defined as the

11  inability to perform any substantial gainful activity due to "any

12  medically determinable physical or mental impairment which can be

13  expected to result in death or which has lasted or can be expected to

14  last for a continuous period of not less than 12 months."  42 U.S.C.

15  § 1382c(a)(3)(A).  The Court may overturn the ALJ's decision that a

16  claimant is not disabled only if the decision is not supported by

17  substantial evidence or is based on legal error.  *Magallanes v. Bowen*,

18  881 F.2d 747, 750 (9th Cir. 1989).  Substantial evidence "'means such

19  relevant evidence as a reasonable mind might accept as adequate to

20  support a conclusion.'"  *Richardson v. Perales*, 402 U.S. 389, 401

21  (1971)(quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

22  It is "more than a mere scintilla but less than a preponderance,"

23  *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998), and "does not

24  mean a large or considerable amount of evidence," *Pierce v. Underwood*,

25  487 U.S. 552, 565 (1988).

26      The Court must uphold the ALJ's conclusion even if the evidence

27  in the record "is susceptible to more than one rational

28  interpretation."  *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595,

1  599 (9th Cir. 1999).   Indeed, if the record evidence can reasonably
2  support either affirming or reversing the Agency's decision, this
3  Court must not substitute its judgment for that of the ALJ.   *Tackett*
4  *v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).   Moreover, as a result
5  of the limited scope of review, the ALJ's decision will be upheld
6  where the evidence is conflicting or inconclusive.   *See Winans v.*
7  *Bowen*, 853 F.2d 643, 647 (9th Cir. 1987).

8  B.   The ALJ Failed to State Specific and Legitimate Reasons for
9       Rejecting the Opinion of Plaintiff's Treating Orthopedist But
10      Properly Weighed the Medical Evidence of Plaintiff's Psychiatric
11      Impairment

12       Plaintiff claims that the ALJ improperly rejected her treating
13  physicians' and her treating psychiatrist's opinions, in favor of the
14  non-treating doctors' opinions.   For the following reasons, the Court
15  finds that the ALJ did not set forth proper reasons for rejecting the
16  treating physicians' opinions, but did set forth proper reasons for
17  rejecting the treating psychiatrist's opinion.

18       A treating physician's opinion on the nature and severity of an
19  impairment will be given controlling weight if it is "well-supported
20  by medically acceptable clinical and laboratory diagnostic techniques
21  and is not inconsistent with the other substantial evidence in [the]
22  case record."   20 C.F.R. § 416.927(d)(2).   The ALJ is not required to
23  accept a treating physician's opinion which is "brief and
24  conclusionary in form with little in the way of clinical findings to
25  support [his or her] conclusion."   *Magallanes*, 881 F.2d at 751
26  (internal quotations omitted); *see also Johnson v. Shalala*, 60 F.3d
27  1428, 1432 (9th Cir. 1995)(noting that the ALJ need not accept a
28  treating physician's opinion that is "conclusory and unsubstantiated

by relevant medical documentation"). "The ALJ may disregard the treating physician's opinion whether or not that opinion is contradicted." *Magallanes*, 881 F.2d at 751.

To reject the conflicting or contradicted opinion of a treating physician, "the ALJ must 'make findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record.'" *Id.* (quoting *Winans*, 853 F.2d at 647). An ALJ may meet this burden by setting forth a detailed summary of the facts and the conflicting evidence, stating his interpretation of the evidence, and making findings. *Id.; see also Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986).

1.    The ALJ Failed to Provide Specific and Legitimate Reasons
      for Rejecting the Opinions of Plaintiff's Treating
      Physicians

Plaintiff's treating doctors concluded that Plaintiff could not work full time. The ALJ rejected (or ignored) these opinions and concluded that she could. Plaintiff claims this was error. The Court agrees.

In May 1998, Plaintiff was referred to Dr. Phillip Kanter, an orthopedist, for evaluation and treatment of an ankle injury. (AR 260-62.) Eighteen months later, Plaintiff was in a automobile accident and aggravated a prior back condition. Thereafter, Plaintiff began seeing Dr. Kanter again on a monthly basis for approximately 18 months. (AR 233-59.) Dr. Kanter's various examinations of Plaintiff did not reveal very significant objective or clinical findings. An MRI of the lower back revealed minimal bulges without stenosis. (AR 256-57.) The only clinical findings were tenderness, some loss of range of motion in back flexion, and mildly positive straight-leg

1  raising.  Otherwise, there was no spasm, and neurological findings

2  were consistently normal.  (AR 234, 235, 238, 240-42, 244-48, 250,

3  253-55, 258.)  Despite these minimal findings, Dr. Kanter opined that

4  Plaintiff could not work for more than four hours in an eight-hour

5  workday.  (AR 233, 237, 241, 243, 249, 251.)

6      Without specifically rejecting Dr. Kanter's opinion of

7  disability, the ALJ concluded that Plaintiff was capable of working

8  for eight hours a day.  The ALJ erred in doing so.  Because Dr. Kanter

9  was Plaintiff's treating physician, the ALJ was required to provide

10  specific and legitimate reasons for rejecting his opinion.  Her

11  failure to do so requires reversal.  *See Winans,* 853 F.2d at 647.

12  (holding that the ALJ's failure to provide specific reasons for

13  disbelieving the treating physician means that substantial evidence

14  does not support his decision and remand is required).

15      The Agency disagrees.  It argues that the ALJ's reliance on the

16  opinions of medical expert Dr. Gerber and consultative examiner Dr.

17  Gary Chen--both of whom noted a lack of correlation between the

18  objective findings and the subjective complaints (AR 66, 372)--

19  constituted substantial evidence upon which the ALJ properly relied.

20  (JS at 8).  This argument is not persuasive.  It was incumbent on the

21  ALJ to explain why she rejected Dr. Kanter's opinion.  *Winans,* 853

22  F.2d at 647. The Court will not speculate as to why it thinks the ALJ

23  did so based on the Agency's arguments on appeal.  Further, Dr. Gerber

24  and Dr. Chen are non-treating physicians.  Neither is entitled to the

25  same deference accorded to a treating physician.  20 C.F.R.

26  § 416.927(d)(2).

27      The Agency further argues that the ALJ implicitly rejected Dr.

28  Kanter's opinion for the same reasons the first ALJ did.  This

9

1   argument is not supported by the record.  Though the second ALJ relied
2   on the first ALJ's summation of the medical evidence, including Dr.
3   Kanter's work, the first ALJ did not provide specific and legitimate
4   reasons for rejecting Dr. Kanter's opinion that Plaintiff could only
5   work part-time.  Though the first ALJ discussed the minimal MRI
6   findings, he never said why Dr. Kanter's opinion was rejected.  Thus,
7   the second ALJ's reliance on the first ALJ's reasoning--or lack there
8   of--was equally defective.  Further, a lack of objective findings, in
9   and of itself, is not enough to reject a treating doctor's opinion.
10  *See Rodriguez v. Bowen*, 876 F.2d 759, 762 (9th Cir. 1989)("While
11  objective diagnoses and observations are the most important parts of a
12  physician's reports, . . . the [ALJ's] reliance on the inability of
13  the physicians to support their findings with objective laboratory
14  findings [does not] constitute[] a clear and convincing reason for
15  rejecting their conclusions.")(internal quotation marks and citation
16  omitted); 20 C.F.R. § 416.927(d)(2) (Treating sources "may bring a
17  unique perspective to the medical evidence that cannot be obtained
18  from the objective medical findings alone or from reports of
19  individual examinations . . . .").

20      The ALJ's failure to provide specific and legitimate reasons for
21  rejecting Dr. Kanter's opinion is particularly problematic because Dr.
22  Kanter's opinion was independently supported by the other treating
23  doctors.  Dr. Timothy Quinn, Plaintiff's family practice physician at
24  the Hubert Humphrey Clinic, who saw Plaintiff every two to three
25  months for approximately two years, opined that Plaintiff could sit
26  for three hours in an eight-hour workday and stand/walk for one hour
27  in an eight-hour workday, an opinion consistent with Dr. Kanter's.
28  (AR 343.)  Dr. Quinn's opinion was not mentioned by the ALJ.

Likewise, the ALJ did not mention Dr. P. A. Lucero, another treating physician, who opined that Plaintiff was unable to perform a "full-time competitive job" on a sustained basis.[2] (AR 288.) Though the second ALJ may have been relying on the first ALJ's decision, the first ALJ merely summarized Dr. Lucero's progress notes without making any findings concerning his opinion.[3] (AR 108.) Similarly, a one-page letter from another treating doctor, Dr. Rodolfo Grotton, was summarized by the ALJ as indicating that "the claimant was disabled because of vertigo, low back pain with sciatic nerve dysfunction, arthritis, hypertension and depression," but no reasons were cited for rejecting the opinion. (AR 23, 403.)

The ALJ's failure to properly address the treating physicians' opinions that Plaintiff could not perform full time work amounts to error. Accordingly, remand is required for further assessment of these opinions. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989).

    2.    The ALJ Provided Specific and Legitimate Reasons for
          Rejecting the Opinion of Plaintiff's Treating Psychiatrist
          Dr. Curtis

Plaintiff contends that the ALJ erred when she rejected the opinion of Plaintiff's treating psychiatrist, Dr. Curtis, that

---

[2] The pages of Dr. Lucero's responses to the questionnaire are out of order in the administrative record, and it is clear that a very pertinent page is missing from the report. (AR 285-86.)

[3] Dr. Lucero's responses to a questionnaire are found at Exhibit 7F. (AR 283-89.) The first ALJ indicated that Dr. Lucero's progress notes covering September 17, 2001 to April 5, 2002, are also part of the Exhibit. (AR 108.) However, the progress notes found in Exhibit 7F are from Dr. Quinn and other physicians at the Los Angeles County Hospital, not Dr. Lucero. (AR 290-312.)

Plaintiff was disabled, and relied, instead, on the medical expert's opinion that Plaintiff was not.[4]  (JS at 5.)  Plaintiff claims that the ALJ did not provide specific and legitimate reasons for rejecting Dr. Curtis' opinion.  (JS at 5.)  She argues further that the ALJ misinterpreted Dr. Curtis' conclusions and, as a result, erroneously concluded that Dr. Curtis' opinion was inconsistent with his findings.  (JS at 5-6.)  Plaintiff also contends that the ALJ's finding that Dr. Curtis was acting as Plaintiff's advocate--another reason for rejecting Dr. Curtis' opinion--was not supported by the evidence.  (JS at 6.)  Finally, Plaintiff claims that the medical expert did not review the complete medical record, and, therefore, his opinion that Plaintiff was not disabled did not amount to substantial evidence.  (JS at 6-7.)

The ALJ rejected the treating psychiatrist's opinion because she agreed with the medical expert that "Dr. Curtis' opinion was inconsistent with his own reported findings."  (AR 24, 74-75.)  This is a specific and legitimate reason for rejecting the opinion and, as set forth below, is supported by substantial evidence in this record. *See Connett v. Barnhart*, 340 F.3d 871, 875 (9th Cir. 2003)(affirming decision rejecting treating physician's opinion where treating

---

[4]  The Court rejects Plaintiff's argument that the ALJ's conclusion regarding Plaintiff's psychological impairments was based entirely on Dr. Drucker's testimony.  (JS at 13.)  The ALJ also cited Dr. Harrell Reznick's psychological evaluation results to support her decision, which indicated that Plaintiff was "capable of performing simple, repetitive tasks with appropriate persistence and pace and had only moderate to mild limitations in the areas of interacting with others in the workplace and dealing with other work stresses."  (AR 24.)  Nevertheless, the Court agrees with Plaintiff that the ALJ relied heavily on the testimony of Dr. Drucker.

physician's extensive limitations were not supported by his own treatment notes).  For that reason, it will be affirmed.

Plaintiff began treatment with Dr. Thomas Curtis in connection with her workers' compensation claim in November 2001.  Dr. Curtis conducted an initial evaluation--which did not make it into the administrative record--and referred her for treatment with his staff. (AR 42.)  On July 18, 2002, Dr. Curtis conducted psychological testing.  (AR 375-401.)  In a September 2002 report setting forth his findings, Dr. Curtis opined that, due to various symptoms, Plaintiff would have "an overall moderate degree of emotional impairment at about the 50% standard . . . ."  (AR 396.)  More specifically, he rated each of eight work functions as being slightly-to-moderately impaired.[5]  (AR 396-97.)  In May 2003, however, Dr. Curtis completed a form for Plaintiff's SSI claim in which he reported that Plaintiff's level of impairment was "marked" in almost all of these same eight work functions.  (AR 352-54.)  Clearly, the inconsistencies between the report and the form are readily apparent.  These inconsistencies support the ALJ's decision to reject Dr. Curtis' opinion.

Plaintiff argues that Dr. Curtis' reports are not inconsistent but that the ALJ "failed to recognize the distinction between the workers' compensation definitions and the definitions used under the Social Security disability scheme."  (JS at 6.)  The record does not support this argument.  It is clear from the hearing transcript that

---

[5]   In workers' compensation terminology, a slight impairment is a noticeable impairment; a moderate impairment is a marked impairment. (JS at 6; *see* 2-32 Hanna, *California Law of Employee Injuries & Worker's Compensation* § 32.02[5][b][iii] n.62 (Matthew Bender, 2006). Therefore, a slight-to-moderate impairment under workers' compensation terminology would be a noticeable to marked impairment under social security terminology.

1    the ALJ was fully aware that the definitions were different, inasmuch

2    as she questioned the vocational expert about the differences between

3    the terms.  (AR 93.)  It is also clear that the medical expert's

4    testimony at the same hearing--that "marked" impairment is

5    "inconsistent with a finding of slight to moderate residual disability

6    in workers' compensation terms"--is supported by substantial evidence

7    in the record.[6]  (AR 74-75.)  Clearly, Dr. Curtis' reports are

8    inconsistent, and Plaintiff has failed to provide any reason

9    supporting such a change.  As such, the ALJ's decision to reject Dr.

10   Curtis' opinion is affirmed.  *See Thomas v. Barnhart*, 278 F.3d 947,

11   957 (9th Cir. 2002)(affirming ALJ's decision to reject treating

12   doctor's opinion where treating doctor stated on claimant's student

13   loan form that student was totally disabled but doctor's notes

14   contradicted claim of total disability).

15        Plaintiff also argues that remand is required because the medical

16   expert, Dr. Drucker, did not review all of Plaintiff's psychiatric

17   treatment records, specifically Dr. Curtis' November 8, 2001 testing

18   and a report summarizing that testing, as evidenced by the following

19   colloquy at the hearing:

20        Q:   [To Dr. Drucker]  So Doctor, you did review the testing

21             that Dr. Curtis did on November 8 of 2001?

22        A:   No, I did not receive that.

23             . . .

24        Q:   Okay, You didn't receive the earlier exhibit?

25

26   _____

27        [6]  The curriculum vitae of medical expert Dr. Drucker indicates
     that he has been an independent medical examiner with the California
28   Workers' Compensation Appeals Board since 1968.  (AR 144.)

                                   14

1       A:    Nor did -- by the way, he refers to a defense

2             examination.  I didn't receive that either.

3       Q:    So you didn't review the testing from Dr. Curtis?

4       A:    I -- well, you heard my testimony.

5   (AR 75.)

6      It is unclear why Dr. Curtis' November 8, 2001 testing and report

7   were not in the administrative record, as it appears they were

8   submitted to the Appeals Council.  (AR 210.)  It is equally unclear

9   why neither was shown to Dr. Drucker at any time.  In reviewing the

10  progress notes that are in the record, however, it does not appear

11  that they would have changed Dr. Drucker's opinion.  (AR 358, 359.)

12  These records appear to be cumulative and do not support Plaintiff's

13  request for remand on this issue.  Further, Dr. Curtis' September 2002

14  27-page report--which details and explains all his treatment of

15  Plaintiff, including the November 2001 testing--was reviewed by Dr.

16  Drucker.  As such, it is fair to say that Dr. Drucker was fully

17  apprised of Dr. Curtis' opinion and the basis for it and was qualified

18  to opine on Dr. Curtis' work.

19      Moreover, Plaintiff essentially ignores other substantial

20  evidence supporting the ALJ's assessment of Plaintiff's mental

21  limitations--namely, the opinions of the consultative psychologist,

22  Dr. Harrell Reznick, and the consultative psychiatrist, Dr. Norma

23  Aguilar.  (AR 313-16, 360-69.)  Dr. Aguilar found that Plaintiff had

24  virtually no limitations except for mild difficulty maintaining

25  persistence and pace in a normal work setting.  (AR 315-16.)  Dr.

26  Reznick concluded that, although Plaintiff had some slight

27  limitations, she could work.  (AR 367.)  Because their opinions are

28  based on their independent clinical findings, the ALJ was free to rely

1  on them in reaching his conclusion that Plaintiff could work. *Andrews*
2  *v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

3  Nevertheless, inasmuch as the matter requires remand on another
4  issue, if Plaintiff continues to believe that the Dr. Curtis' initial
5  report and intermediate progress notes are relevant, she may submit
6  them to the ALJ on remand.  If additional evidence is submitted, the
7  ALJ should summarize the evidence and make specific findings
8  concerning the weight to be accorded the evidence.

9  C.  The ALJ Did Not Err in Finding Plaintiff's Subjective Pain
10     Testimony Not Fully Credible

11  Plaintiff testified, in essence, that her back pain and emotional
12  problems prevented her from working.  The ALJ found this testimony
13  incredible and rejected it.  Plaintiff claims this was error.  For the
14  following reasons, the Court disagrees.

15  An ALJ must undertake a two-step analysis when considering a
16  claimant's subjective symptom testimony. *Smolen v. Chater*, 80 F.3d
17  1273, 1281 (9th Cir. 1996).  First, she must determine if the claimant
18  has produced objective medical evidence of an impairment which could
19  reasonably be expected to produce the symptoms alleged. *Id*. at
20  1281-82.  Second, she must determine the claimant's credibility as to
21  the severity of the symptoms. *Id.* at 1282.  If the claimant produces
22  objective medical evidence of an impairment and shows that the
23  impairment could be expected to produce the symptoms alleged, the ALJ
24  can only reject the claimant's testimony concerning the severity of
25  the symptoms by citing specific, clear, and convincing reasons for
26  doing so. *Id.*  The ALJ may not discredit the claimant's testimony as
27  to degree of pain merely because it is unsupported by objective
28  evidence. *See Bunnell v. Sullivan*, 947 F.2d 341, 343, 346-47 (9th

Cir. 1991)(en banc).  In making a credibility determination, the ALJ may take into account, among other things, (1) ordinary credibility evaluation techniques, (2) unexplained or inadequately explained failure to seek or follow treatment, and (3) the claimant's daily activities.  *Smolen*, 80 F.3d at 1284.[7]  If the ALJ's credibility finding is supported by substantial evidence in the record, the Court may not engage in second-guessing.  *Thomas*, 278 F.3d at 959.

Plaintiff testified that she could not work due to back pain and depression.  (AR 81-89.)  She stated that during the day she takes over-the-counter Extra-Strength Tylenol to relieve her back pain about two to three times per week and at night she takes Tramadol,[8] which makes her sleepy.  (AR 84.)  Other than physical therapy, no other course of treatment has been prescribed for Plaintiff.  (AR 84.) Plaintiff stated on her Daily Activities Questionnaire that her average day consists of walking her dog, listening to music, having coffee, driving to pick up her cousin, eating dinner, studying her bible, and watching television.  (AR 194.)  She also reported not needing significant assistance performing work around the house, though she claimed feeling weak the day after performing household chores.  (AR 194.)  Plaintiff also reported being able to go grocery

---

[7]  Social Security Ruling ("SSR") 96-7p provides that the ALJ's assessment of the credibility of subjective pain statements must be based on a consideration of all of the evidence in the case record, which includes, but is not limited to, medical signs and laboratory findings; diagnosis, prognosis, and other medical opinions; statements and reports from the claimant and others; prior work record and efforts to work; daily activities; and observations about the individual.

[8]  Tramadol is an analgesic medication used for treating moderate to severe pain.  Wikipedia.org, *Tramadol*, http://en.wikipedia.org/ wiki/Tramadol (last visited July 28, 2006).

shopping with some minor assistance, and being able to attend church and participate in church activities. (AR 194-95.)

The ALJ found that Plaintiff's allegations regarding her physical limitations were not totally credible because, among other things, she could control the pain during the day with over-the-counter medications. (AR 25, 27.) This is a legitimate reason to reject a claimant's allegations of pain. *See Loving v. Department of Health and Human Services,* 16 F.3d 967, 971 (8th Cir. 1994)(upholding ALJ's decision that taking over-the-counter pain medication was inconsistent with claim of disabling pain). The ALJ also noted that "[h]er daily activities were not significantly limited by the . . . physical limitations." (AR 25.) Again, this is a legitimate reason to reject a claimant's complaints of pain. *Smolen*, 80 F.3d at 1284. So, too, was the ALJ's observation that multiple examining and consultative physicians opined that Plaintiff could perform light work. (AR 22-25.) In fact, the ALJ noted that one doctor stated "claimant was capable of performing all normal activities of daily living." (AR 24.) Finally, the ALJ concluded that there was a "striking lack of correlation" between the objective and subjective evidence of pain. (AR 22.) Although the lack of objective evidence cannot be the sole reason for disbelieving subjective complaints, it is, nevertheless, one of the factors the ALJ can consider. *Bunnell*, 947 F.2d at 346-47.

With regard to Plaintiff's claims about her psychological impairments, the ALJ noted that she appeared to be "genuinely depressed," but that "her depression does not render her totally incapable of performing work activity." (AR 24.) Thus, the ALJ did not totally reject Plaintiff's subjective complaints related to her depression. The ALJ observed, however, that Plaintiff's daily

18

1  activities were not significantly limited by the emotional . . .

2  limitations."  (AR 25.)  This reason, which was supported by

3  substantial evidence in the record, is sufficiently specific, clear,

4  and convincing to support the ALJ's decision to reject Plaintiff's

5  claims.  *Smolen*, 80 F.3d at 1284.

6      For these reasons, the ALJ's finding that Plaintiff was not

7  credible is affirmed.

8  D.  The ALJ's Hypothetical Question to the Vocational Expert

9      Adequately Incorporated All of Plaintiff's Limitations

10     Plaintiff contends in this appeal that the ALJ erred by not

11  including in the hypothetical to the vocational expert that Plaintiff

12  was also limited because she seldom to often had difficulties in

13  concentration, persistence, and pace.  (JS at 19.)  She claims that

14  this oversight mandates reversal.  Defendant counters that the ALJ was

15  not required to include this limitation in the hypothetical to the

16  vocational expert because it was subsumed in the ALJ's qualification

17  that Plaintiff was limited to no more than average production and

18  pace.  (JS at 22-23.)

19     The Court concludes that the ALJ did not err in failing to

20  include in the hypothetical to the vocational expert that Plaintiff

21  seldom to often had deficiencies of concentration, persistence, and

22  pace.  This limitation was adequately incorporated in the ALJ's

23  hypothetical, limiting Plaintiff to simple, repetitive tasks, with no

24  more than an average production or pace.  *See Brachtel v. Apfel*, 132

25  F.3d 417, 421 (8th Cir. 1997)(finding that the ALJ's hypothetical

26  question that Brachtel was able "'to do only simple routine repetitive

27  work, which does not require close attention to detail' . . . and that

28  '[Brachtel] should not work at more than a regular pace'" adequately

incorporated the ALJ's finding that Brachtel "often" had deficiencies of concentration, persistence, or pace).

Plaintiff also argues that the vocational expert deviated from the Dictionary of Occupational Titles ("DOT") because the jobs she testified Plaintiff could perform required a reasoning level of two (ability to carry out detailed but uninvolved instructions), which is inconsistent with Plaintiff's limitation to simple and repetitive tasks. (JS at 20-22.) Plaintiff argues that, because the vocational expert was deviating from the DOT, the ALJ had a duty to articulate why she accepted the vocational expert's testimony. (JS at 20-22.) The Court disagrees with Plaintiff's argument here. Just because someone is limited to simple and repetitive tasks does not mean that they are incapable of performing at a reasoning level of two, which requires "commonsense understanding to carry out detailed but uninvolved written or oral instruction," and the ability to "[d]eal with problems involving a few concrete variables in or from standardized situations." *Dictionary of Occupational Titles*, (4th ed. 1991) § 559.687-074 (inspector and hand packager) and § 361.687-022 (linen grader). A limitation to simple and repetitive tasks does not preclude jobs requiring a reasoning level of two. Moreover, the vocational expert testified that the linen grader and hand packager jobs were both "simple and repetitive-type jobs," and explained her rationale for this statement on cross-examination. (AR 94-95.) Thus, there was no deviation from the DOT and Plaintiff's argument here fails.[9]

_____

[9]   The Court notes that, on remand, the residual functional capacity assessment may change, depending on the weight given to the opinions of Plaintiff's treating physicians. If a vocational expert

1

2                                    IV.

3                                CONCLUSION

4          For these reasons, the Agency's decision is reversed and the case

5   is remanded to the Agency for further proceedings consistent with this

6   Opinion.

7
           IT IS SO ORDERED.
8

9          DATED: September  14  , 2006

10

11
                                    _____/s/_____
12                                  PATRICK J. WALSH
                                    UNITED STATES MAGISTRATE JUDGE
13

14

15

16

17

18

19

20

21

22

23

24

25  S:\PJW\Cases-Soc Sec\BRADLEY\Memo_Order.wpd

26

27  _____

28  is called, the hypothetical should contain any new residual functional
    capacity finding.

                                    21